IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SCOTT JOHNSTON,                             No. CIV S-09-1353-FCD-CMK

        Plaintiff,

  vs.                                                      FINDINGS AND RECOMMENDATIONS

CITY OF RED BLUFF, et al.,

        Defendants.

_____/

       Plaintiff brings this civil action under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, against the City of Red Bluff and various of its employees, as well as Art Frolli, a union representative for Operating Engineers Local No. 3.[1]  Plaintiff alleges age discrimination and related constitutional and state law torts with respect to his employment as an engineering technician for defendant City of Red Bluff.  All defendants have been served.  Defendants City of Red Bluff, Nichols, Pritchard, Barthel, and Crabtree (the "city defendants") filed an answer to the complaint on June 5, 2009.[2]

---

    [1]    Plaintiff does not name the union as a defendant.

    [2]    A scheduling conference is set for October 29, 2009, at 10:00 a.m.

1

Pending before the court is defendant Frolli's motion to dismiss (Doc. 15). The matter was heard on August 27, 2009, in Redding, California. Plaintiff appeared pro se. James Ackerman, Esq., of the Law Offices of Nevin and Absalom appeared for defendant Frolli. James A. Wyatt, Esq., of the Law Offices of James A. Wyatt appeared for the city defendants.

## I. BACKGROUND

Plaintiff was hired by defendant City of Red Bluff in August 2000 as an Engineering Technician I ("Tech I"). He states that, based on his experience and background, he was disappointed that he was not offered the position of Engineering Technician II ("Tech II"), but was told by his supervisor that "as things work your advancement would come quickly."[3] Plaintiff states that, shortly after he began employment, he learned that the city only had positions for one Tech I and one Tech II and that advancement to the Tech II level could only occur upon retirement of the individual who held that position. Plaintiff adds that Bill Hinek, who had worked for 20 years as a Tech I, was promoted to the Tech II position just before plaintiff was hired and that the Tech II position was never posted or put out to bid.

Plaintiff claims that, "some time in 2001," the position of Engineering Technician III ("Tech III") position was created for senior technicians. Plaintiff was informed at this time that the city could have more than one Tech III and that there was no reason why he could not advance to that position over time. Plaintiff states that, in 2001, Hinek was promoted to Tech III and that the position was not posted or put out to bid. Plaintiff was promoted to the Tech II position in February 2002.

/ / /

/ / /

/ / /

---

[3] Plaintiff had worked in the field for 20 years and was 43 years old when hired.

1         By August 2004, plaintiff had reached the top of the Tech II classification and
2 expected that he would be promoted to Tech III.  Plaintiff states that he was told by defendant
3 Barthel that he was not qualified for the Tech III position.  Plaintiff disagreed with this
4 assessment in that, as a Tech II, he had been doing the same work Hinek was performing as a
5 Tech III.  Plaintiff states that Barthel then responded that there was not enough money in the city
6 budget to promote plaintiff to the Tech III level.  Plaintiff states that he believes he was not
7 promoted because Barthel disliked him and that, when he approached other city defendants with
8 this complaint, they did nothing.  Plaintiff was repeatedly denied promotion.

9         According to plaintiff, Hinek retired in May 2007 and he believed that he would
10 then be promoted to the Tech III position.  By August 2007, however, he was told that there was
11 still insufficient money in the budget for him to be promoted to Tech III.  Plaintiff states that,
12 over the course of the next year, he performed the duties of both the Tech II and Tech III
13 positions and was thanked by Barthel for his hard work.

14         Plaintiff states that, "[s]ometime in May of 2008" he learned that a job opening
15 for a Tech II/III had been posted.  He adds that "[t]here was no doubt in the Plaintiff's mind that
16 Defendant Mark Barthel would hire someone at around the lowest step of Tech II, and that this
17 would finally create an opportunity for him to be promoted to Tech III."  Plaintiff claims that the
18 "general practice" had been to promote from within.  Nonetheless, a new person – Vinnie
19 Pagnano – was hired in June 2008 as a Tech III and plaintiff was not promoted.

20         Plaintiff states that, when he questioned Barthel about this situation in August
21 2008, Barthel "acted surprised" and "simply acted angry."  Plaintiff states that he was so upset by
22 this that he was compelled to take several days off of work and that he had little sleep during this
23 time.  On August 18, 2008, plaintiff sent an email entitled "Enough is Enough" to several city
24 officials outlining the promotion problem.  He sent a copy of this email to his union
25 representative, defendant Frolli.  According to plaintiff, defendant Frolli responded by asking
26 plaintiff to send him copies of the job descriptions for the Tech II and Tech III positions, which

plaintiff did.

Plaintiff took more time off from work on August 21 and 22 because he was "fatigued and too upset to work." On August 25, 2008, plaintiff sent Frolli another email "stating that he hadn't heard anything, and provided him with his cell phone number . . . ." Plaintiff later heard from defendant Frolli who told him that, because the positions were not designated as "flex positions," the city was under no obligation to promote from within. Plaintiff states that "Defendant Art Frolli did not seem concerned about the circumstances surrounding changes in management, the things prior supervisors had said, or the qualifications of the new employee." Plaintiff claims that defendant Frolli "did not seem to have enough knowledge about the job to help, and rather than admit that, he pretended to have everything under control, the answer he gave the Plaintiff would not require him to do anything more." Plaintiff filed a complaint on the city's personal injury form on October 21, 2008, after no progress had been made on his case. By November 2008, plaintiff believed that he was being "set-up to be laid off." Plaintiff alleges that Frolli was part of this "conspiracy."

According to Plaintiff, in late October 2008 defendant Frolli sent an email outlining the details of a conversation with defendant Pritchard, the Director of Human Resources for the City of Red Bluff. Plaintiff states:

> . . . This email contained Defendant Art Frolli's interpretation of what Defendant Tessa Pritchard allegedly said, much of which were fairly bold misrepresentations or outright lies about the Plaintiff's qualifications and those of the new man Vinnie Pagnano. The email concluded with the same rhetoric, about the job classification not specifying that it was a "Flex" position, therefore, Defendant Red Bluff had done nothing wrong.

Plaintiff responded to this email by advising Frolli that what defendant Pritchard had told him was untrue. Plaintiff provided Frolli with "additional details" and "rightfully protesting that he [Frolli] appeared to simply be accepting Defendant Tessa Pritchard's version of the story."

/ / /

/ / /

Plaintiff adds:

> . . . To this, Defendant Art Frolli fired back an email rebuffing the Plaintiff for making such a suggestion, and then presented some questions that he said had not been answered that would need to be addressed if this issue was to ever be brought before an arbitrator. The Plaintiff immediately responded, providing answers to these questions, but never received a reply.

Concerned with the alleged misinformation provided by Pritchard to Frolli, on November 12, 2008, plaintiff sent Pritchard and Frolli a seven-page document outlining the "Essential Duties and Responsibilities" of the Tech II and Tech III positions. Plaintiff followed up with an email to Frolli on December 8, 2008. According to plaintiff, "[Frolli] sent an email back stating that he had not heard from her [Pritchard], and characterized the document as 'well thought out and complete,' but did not offer any other comments."

Plaintiff states that, "[s]ince November of 2008" he had suffered "nearly sleepless Sunday nights, as the anguish of returning to work the next day would consume his thoughts." He also states that he was being isolated and taken "out of the loop" at work. In February 2009 plaintiff began researching the law on age discrimination and sent Frolli an email "questioning why he had not recognized this as age discrimination." Frolli responded that, because plaintiff had never applied for the Tech III position when it was posted, there was no reason for the city to have considered him for the position. By March 2009 the city began laying off various workers. Plaintiff states:

> Upon information and belief, around this time in March 2009, there was a meeting between Defendant Art Frolli and the union members to discuss what would happen next. He explained that any layoffs would be conducted according to seniority, except in the case of one career position, where one employee had more education than the other. To those in attendance, this was taken to be a direct reference to the Plaintiff.

/ / /

/ / /

/ / /

5

He adds:

> Upon information and belief, Defendants Red Bluff, Martin Nichols, Tessa Pritchard, and Mark Barthel will pursue to lay off more employees, including the Plaintiff, while not laying off the new employee, Vinnie Pagnano. . . . Defendant Art Frolli will participate in this process.

Plaintiff states that, as a result of his treatment, he "lost his identity [at] this workplace that was once so familiar," lost sleep on Sunday nights, and developed difficulty walking.

## II.  DISCUSSION

Beginning on page 24 of the complaint, plaintiff alleges eight claims for relief as follows:

| | |
|---|---|
| <u>Claim 1</u> | Age discrimination in violation of ADEA; |
| <u>Claim 2</u> | Denial of substantive due process; |
| <u>Claim 3</u> | Denial of procedural due process; |
| <u>Claim 4</u> | Civil conspiracy; |
| <u>Claim 5</u> | Civil conspiracy and fraud; |
| <u>Claim 6</u> | Civil conspiracy, fraud, and wrongful termination; |
| <u>Claim 7</u> | Deceit, defamation, and infliction of emotion distress; and |
| <u>Claim 8</u> | Negligence. |

In his motion, defendant Frolli argues: (1) plaintiff's claim in Claim 1 for violation of ADEA is not cognizable as a matter of law; (2) plaintiff fails to allege sufficient facts to support a claim in Claim 2 for violation of substantive due process; (3) plaintiff fails to allege sufficient facts to support a claim in Claim 3 for violation of procedural due process; (4) plaintiff fails to allege sufficient facts to support a claim in Claim 4 for civil conspiracy; (5) plaintiff's claim in Claim 4 for civil conspiracy is not cognizable as a matter of law; (6) plaintiff fails to allege sufficient facts to support claims in Claim 5 of civil conspiracy and fraud; (7) plaintiff's claim in Claim 5

of civil conspiracy is duplicative of Claim 4; (8) plaintiff fails to allege sufficient facts to support a claim in Claim 6 for wrongful termination; (9) plaintiff's claims in Claim 6 of civil conspiracy and fraud are duplicative of Claim 5; (10) Claim 7 is duplicative of Claims 5 and 6; (11) plaintiff fails to allege sufficient facts to support a claim in Claim 7 of defamation; (12) plaintiff fails to allege sufficient facts to support a claim in Claim 7 of infliction of emotional distress; and (13) plaintiff fails to allege sufficient facts to support a claim in Claim 8 of negligence against defendant Frolli.

### A.  Claim 1

In Claim 1, plaintiff alleges violation of ADEA. According to defendant, ADEA "covers actions [against] employees age 40 and over [by] employers in industries affecting commerce with 20 or more full time employees." See 29 U.S.C. § 630(b), (f). Defendant argues that ADEA does not provide any cause of action against an individual. Defendant is correct. See Miller v. Maxwell's Intern, Inc., 991 F.2d 583, 587 (9th Cir. 1993). Furthermore, as defendant notes, only employers can be liable. Here, defendant Frolli was not plaintiff's employer. For these reasons, defendant Frolli is not a proper defendant with respect to plaintiff's ADEA claim.[4]

### B.  Claim 2

In Claim 2, plaintiff alleges denial of substantive due process.[5] Defendant Frolli argues that plaintiff cannot state a substantive due process claim against him because he is not a state actor. See Palko v. Connecticut, 302 U.S. 319, 325 (1937). He also argues more generally that plaintiff cannot state substantive due process claim because plaintiff's employment issues do

---

[4] Likewise, none of the individual city defendants are proper defendants. Only defendant City of Red Bluff is a proper defendant to plaintiff's ADEA claim. However, because plaintiff paid the filing fees for this case, the court cannot dismiss the ADEA claim as against the other individual defendants sua sponte under its screening power. Because they have filed an answer to the complaint, the other individual defendants would have to file a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) for dismissal of the ADEA claim against them.

[5] Defendant correctly notes that plaintiff fails to specify whether his substantive due process claim is brought under the federal constitution, the California constitution, or both.

not relate to a fundamental right.  See also Mass. Bd. of Retirement v. Murgia, 427 U.S. 307, 313 (1976) (holding that a right to governmental employment is not a fundamental right protected by substantive due process).  The court agrees with defendant Frolli that plaintiff cannot state a substantive due process claim.  Regardless of whether Frolli is a state actor, plaintiff's right to employment is not a fundamental right for purposes of substantive due process protection.[6]

### C. Claim 3

In Claim 3, plaintiff alleges denial of procedural due process.[7]  Defendant argues that plaintiff does not state a claim as to Frolli because plaintiff fails to allege any facts indicating the denial of any procedural guarantees with respect to a protected liberty interest.  Specifically, defendant contends that, because this case is about alleged employment discrimination, the only interest at stake is plaintiff's property interest in employment.  While defendant concedes that procedural protections apply to such an interest, see Armstrong v. Myers, 964 F.2d 948, 950 (9th Cir. 1992), defendant concludes that plaintiff fails to state a claim because he does not allege in the operative pleading that his employment has ended.

A review of the complaint reveals that plaintiff does not, in fact, allege that his employment has ended.  Therefore, defendant Frolli is correct in this regard.  Moreover, as with plaintiff's substantive due process claim, defendant Frolli is not a state actor.  Because Frolli is not a state actor, plaintiff cannot state a due process claim or any other constitutional claims against him as a matter of law.  However, plaintiff may be able to state constitutional claims against the remaining city defendants.  The court notes that plaintiff states in his opposition to defendant Frolli's motion to dismiss that his employment was terminated on July 31, 2009 – after the original complaint was filed.  Therefore, it is possible that plaintiff can cure the defect in

---

[6] Because defendant Frolli's motion attacks the entire claim and not just as it is asserted against him, Claim 3 should be dismissed in its entirety.

[7] Again, he does not state whether this claim arises under the state or federal constitution, or both.

8

Claim 3 discussed above with respect to a procedural due process claim against the city defendants by amending the complaint to allege that his employment was terminated. Plaintiff will be provided an opportunity to amend as to Claim 3.

### D.     Claim 4

In Claim 4, plaintiff alleges a civil conspiracy. As defendant Frolli correctly notes, a plaintiff alleging a conspiracy in a federal case must allege with sufficient factual particularity that the defendants reached some "explicit or tacit understanding or agreement." Alfus v. Pyramid Technology Corp, 745 F. Supp. 1511, 1521 (N.D. Cal. 1990). Defendant Frolli argues that plaintiff has not alleged any facts to suggest that he formed an agreement with any other defendant with respect to plaintiff's employment. Based upon a review of the complaint, the court agrees. Plaintiff's specific factual allegations as to Frolli relate to emails plaintiff sent him, Frolli's responses thereto, and Frolli's alleged inaction with respect to a possible ADEA claim.

Plaintiff argues that defendant Frolli's alleged failure to properly represent him with respect to his employment problems is sufficient to show a tacit agreement. This argument is unpersuasive because plaintiff does not allege any relationship between Frolli and any of the other defendants such that, even if Frolli failed to adequately represent plaintiff, the failure could be understood as furthering any kind of agreement with the other defendants. Frolli's conduct, as alleged, is separate from and unrelated to the alleged conduct of the other defendants.

The court is mindful of plaintiff's allegation that, in October 2008, defendant Frolli sent him an email outlining the details of a conversation between Frolli and defendant Pritchard, and that plaintiff claims Frolli had accepted Pritchard's alleged misrepresentations regarding "the Plaintiff's qualifications and those of the new man Vinnie Pagnano." This allegation does not indicate any kind of agreement between Frolli and Pritchard regarding plaintiff's employment. Rather, it indicates an alleged misunderstanding on the part of Frolli. This is borne out by plaintiff's allegation that he later sent Frolli a seven-page document

outlining the "Essential Duties and Responsibilities" of the Tech II and Tech III positions, which Frolli stated was well-written and which he discussed with Pritchard.

The court is also mindful of plaintiff's allegation that, in March 2009, Frolli met with union members to discuss ongoing layoffs and that, according to plaintiff, Frolli stated that additional layoffs would happen in the future according to seniority, except as to plaintiff's position because Pagnano had more education than plaintiff. Plaintiff adds that "Defendant Art Frolli will participate in this process." These allegations, however, do not indicate any agreement between Frolli and any other defendant regarding plaintiff's employment. Instead, they represent Frolli's statements of what he anticipated at the time would happen in the future regarding layoffs and, in general, how he believed layoffs would be prioritized. As to plaintiff's allegation that Frolli would participate in the layoff process, this statement is entirely conclusory and is not attended with sufficient particularity to suggest a plausible basis for conspiracy. Moreover, even accepting that Frolli would participate in the layoff process, his mere participation does not indicate an agreement with any other defendant with respect to plaintiff in particular.

### E.   Claim 5

In Claim 5, plaintiff re-alleges a civil conspiracy, and also alleges fraud. Defendant is correct that the claim is duplicative of Claim 4 as to civil conspiracy. As to fraud, defendant argues that plaintiff has not alleged sufficient facts to show the elements of fraud under state law. In California, fraud requires: (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud or induce reliance; (4) justifiable reliance; and (5) damage. See Lazar v. Superior Court, 12 Cal.4th 631, 638 (1996). Defendant concludes that plaintiff cannot state a fraud claim because he has not alleged any facts to show that defendant Frolli misrepresented anything he knew to be false. Defendant is correct. As to Frolli, plaintiff alleges that he investigated the Tech II and III position descriptions in response to plaintiff's emails and informed plaintiff that, because these positions were "flex positions," there was no obligation to offer plaintiff internal

promotion. Further, defendant Frolli told plaintiff that there was no obligation to hire plaintiff for the Tech III position which had been posted in 2008 because he never applied for that position. None of these allegations relate to any known falsehood related to plaintiff by Frolli. Plaintiff simply has not stated any claim of fraud as against Frolli. For the reasons discussed above, the court does not find any misrepresentation suggested by plaintiff's allegation that Frolli accepted Pritchard's allegedly false statements regarding his job performance and qualifications.

### F. Claim 6

In Claim 6, plaintiff alleges civil conspiracy, fraud, and wrongful termination. As to the claims of civil conspiracy and fraud, Claim 6 is duplicative of Claims 4 and 5. As to wrongful termination, defendant Frolli correctly argues that, because plaintiff does not allege in the operative complaint that he was ever terminated or that his employment ended, he cannot maintain a claim of wrongful termination. Because it appears, however, that plaintiff's employment was terminated after the original complaint was filed, plaintiff will be given an opportunity to amend the complaint with respect to his wrongful termination claim against the city defendants.[8]

### G. Claim 7

In Claim 7, plaintiff alleges deceit, defamation, and infliction of emotional distress. Under California law, deceit and fraud have the same elements. See Small v. Fritz Companies, Inc., 30 Cal.4th 167, 173 (2003). Defendant Frolli argues that plaintiff cannot maintain a deceit claim for the same reason discussed above that he cannot maintain a fraud claim. Specifically, as to Frolli, plaintiff has not alleged facts to show that Frolli misrepresented any knowingly false information. This argument is persuasive.

///

///

---

[8] For the reasons discussed below in the context of Claim 8, however, plaintiff cannot proceed with such a claim against defendant Frolli.

As to defamation, defendant Frolli argues that, under California law, defamation requires a publication. See Taus v. Loftus, 40 Cal.4th 683, 720 (2007). Defendant concludes that plaintiff's complaint fails to state a claim against him for defamation because plaintiff has not alleged what words Frolli published or, for that matter, that Frolli published anything at all about plaintiff. Defendant Frolli is correct.[9]

As to infliction of emotional distress, defendant Frolli addresses both intentional and negligent infliction of emotional distress because plaintiff's complaint does not specify which claim he is raising. Regarding the former, defendant correctly notes that California law requires as an essential element extreme and outrageous conduct by the defendant, see Cole v. Fair Oaks Fire Protection Dist., 43 Cal.3d 148, 155 (1987), and concludes that plaintiff cannot state a claim because he has not alleged any such conduct on the part of Frolli. Regarding the latter, defendant Frolli correctly observes that plaintiff has not alleged any of the elements of negligence as to Frolli's conduct and, for this reason, concludes that he cannot maintain a claim of negligent infliction of emotional distress.[10]

**H.    Claim 8**

In Claim 8, plaintiff alleges general negligence. As defendant correctly notes, plaintiff cannot prevail on a negligence claim (or on any other theory, for that matter) against Frolli. Under the Taft-Harley Act the union is the sole source of recovery for the alleged conduct of individual union representatives. See Atkinson v. Sinclair Refining Co., 370 U.S. 238 (1962). A plaintiff cannot subvert the Taft-Hartley Act by suing individual union agents or

---

[9]    As discussed below regarding Claim 8, plaintiff is not entitled to leave to amend as to Frolli. Regarding the remaining city defendants, defendant Frolli's motion is only directed to plaintiff's allegations as against him and, for this reason, the sufficiency of plaintiff's allegations as against the city defendants are not at issue and the court expresses no opinion in this regard. The city defendants are free, however, to file a Rule 12(c) motion if they desire.

[10]    See discussion regarding Claim 8 for further analysis of negligence and Frolli's liability in general. And, again, the sufficiency of plaintiff's allegations as against the remaining city defendants is not at issue.

representatives.  See id.  For this reason, the court concludes that plaintiff cannot state any claim against Frolli individually for alleged actions taken as his union representative.[11]

### III.  CONCLUSION

Based on the foregoing, the undersigned recommends that:

1. Defendant Frolli's motion to dismiss (Doc. 15) be granted;

2. Defendant Frolli be dismissed with prejudice;

3. Claim 2, alleging denial of substantive due process, be dismissed with prejudice; and

4. Plaintiff's complaint be dismissed with leave to amend.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: November 20, 2009

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE

---

[11] Plaintiff may, in an amended complaint, name the union to seek recovery based on Frolli's alleged conduct.