**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SCOTT JOHNSTON, | No. 2:09-CV-1353-MCE-CMK |
| Plaintiff, | |
| vs. | <u>FINDINGS AND RECOMMENDATIONS</u> |
| CITY OF RED BLUFF, et al., | |
| Defendants. | |
| _____/ | |

Plaintiff brings this civil action under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, against the City of Red Bluff and various of its employees. Pending before the court is defendants' motion for summary judgment (Doc. 93). The parties appeared for a hearing before the undersigned on January 23, 2013, in Redding, California. Plaintiff appeared pro se. James A. Wyatt, Esq., appeared for defendants. After considering oral arguments, the matter was submitted.

/ / /

/ / /

/ / /

/ / /

# I. BACKGROUND

## A. Plaintiff's Factual Allegations and Legal Theories

This action proceeds on the second amended complaint filed April 8, 2011. Plaintiff was hired by defendant City of Red Bluff in August 2000 as an Engineering Technician I. He was 43 years old at the time. In February 2002 plaintiff was promoted to the position of Engineering Technician II. According to plaintiff, this position was not posted or advertised and he was promoted solely based on the recommendations of his supervisors. Plaintiff states that, based on this history, he expected to be promoted to Tech III "within the next few years." Plaintiff states that his immediate supervisor – Tim Wood – was replaced by defendant Barthel in mid-2004. According to plaintiff, "personality clashes" between plaintiff and Barthel developed "over the years."

Plaintiff states that, by August 14, 2005, he "deserved a promotion" and that a promotion required a recommendation from Barthel. Barthel informed plaintiff that there was not enough money in the city budget for plaintiff to be promoted. Plaintiff claims that, unknown to him at the time, in early 2008 the city began looking for another engineering technician. Plaintiff states that defendants Barthel, Pritchard, and Nichols "would have each known of the opening, but they did not tell the Plaintiff about it." He also states that both Barthel and Pritchard "were aware from prior conversations with the Plaintiff that he wanted to be promoted to the Tech III position, yet neither of them mentioned this opportunity." Plaintiff adds that the City of Red Bluff never provided a written policy regarding promotions and none of the defendants ever suggested that plaintiff would have to formally apply for the promotion.

According to plaintiff, sometime in July 2008 a new person (Pagnano) was hired as a Tech III and that he was only 35 years old. Plaintiff states that he approached defendant Nichols about the situation and was told by Nichols that he should have applied for the position. Plaintiff states that he was terminated on July 31, 2009.

/ / /

Beginning on page 7 of the second amended complaint, plaintiff alleges four claims for relief as follows:

<u>Claim 1</u>     Age discrimination in violation of ADEA.
<u>Claim 2</u>     Denial of procedural due process.
<u>Claim 3</u>     Civil conspiracy, fraud, and wrongful termination.
<u>Claim 4</u>     Negligence.

**B.     Procedural History**

Defendants' motion to dismiss the first amended complaint was granted in part and denied in part, and plaintiff was provided an opportunity to file the second amended complaint. Findings and recommendations addressing defendants' motion to dismiss the first amended complaint were issued on February 8, 2011, and adopted in full <u>except as to plaintiff's negligence claim</u> on March 31, 2011.

As to plaintiff's ADEA claim (Claim 1), the court agreed with defendants that such a claim can only proceed as against the City of Red Bluff and not against any individual defendants. As to plaintiff's procedural due process claim (Claim 2), the court concluded that a Memorandum of Understanding ("MOU") between the city and plaintiff's union provided some process to plaintiff, but plaintiff had not met his burden of pleading either that defendants interfered with the process available under the MOU, or that such processes were inadequate. Plaintiff was provided an opportunity to amend to so allege. As to plaintiff's conspiracy claim (Claim 3), plaintiff was provided leave to amend in order to allege facts which would allow the court to reasonably conclude that one particular defendant agreed with one or more other defendants to wrongfully terminate plaintiff.

As to plaintiff's negligence claim (Claim 4), the court ultimately concluded that such a claim is plausible against the City of Red Bluff on a respondeat superior theory of liability and against the individual defendants on a traditional theory. Plaintiff was provided an opportunity to amend the claim as to the City of Red Bluff. The court denied defendants' motion

on the negligence claim as to the individual defendants, concluding that they had not met their burden of establishing that state law grants them immunity from such a claim.

Plaintiff filed his second amended complaint on April 8, 2011, and all defendants have answered.  Plaintiff filed a motion for summary judgment on January 6, 2012, which was denied on August 13, 2012.

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

///

1    If the moving party meets its initial responsibility, the burden then shifts to the
2 opposing party to establish that a genuine issue as to any material fact actually does exist. See
3 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to
4 establish the existence of this factual dispute, the opposing party may not rely upon the
5 allegations or denials of its pleadings but is required to tender evidence of specific facts in the
6 form of affidavits, and/or admissible discovery material, in support of its contention that the
7 dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party
8 must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome
9 of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986);
10 T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and
11 that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict
12 for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).
13    In the endeavor to establish the existence of a factual dispute, the opposing party
14 need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the
15 claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
16 versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary
17 judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a
18 genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory
19 committee's note on 1963 amendments).
20    In resolving the summary judgment motion, the court examines the pleadings,
21 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
22 any.  See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See
23 Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed
24 before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.
25 Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to
26 produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

1  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

2  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

3  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

4  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

5  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

### III.  DISCUSSION

#### A.  ADEA (Claim 1)

Plaintiff complains that he suffered age discrimination resulting from the following adverse employment actions:  (1) he was not properly informed of the opportunity to apply for the Tech III position and was then denied promotion to the Tech III position because it had already been filled when Pagnano, a younger individual, was hired; and (2) he was terminated when the Tech II position was defunded as part of a workforce reduction.  In denying plaintiff's motion for summary judgment on his ADEA claim, the court concluded that a genuine dispute of material fact exists as to: (1) whether the workforce reduction was actually legitimate and non-discriminatory, or simply a pretext for hiring a younger person into the Tech III position instead of plaintiff; and (2) whether and to what extent plaintiff was capable of performing the duties required of the Tech III position.   Defendants now argue that the undisputed evidence shows that, in fact, the workforce reduction was legitimate and non-discriminatory.[1]

Generally, to establish a prima facie case under the ADEA, the plaintiff must prove: (1) he was in the protected class of persons over age 40; (2) he was performing his job satisfactorily; (3) he suffered an adverse employment action; and (4) the employer retained a sufficiently younger and similarly situated individual to permit a reasonable inference of age discrimination.  See Coleman v. Quaker Oats, Co., 232 F.3d 1271, 1281 (9th Cir. 2000).  Once a

---

[1] Defendants do not make any legal argument relating to plaintiff's qualifications for the Tech III position, though their declarations discuss plaintiff's qualifications.

prima facie case has been established, the burden shifts to the defendant to articulate a legitimate non-discriminatory basis for the employment decision.  See id.

    1.    Reduction in Workforce

Where the discharge in question arises from a reduction in workforce, a reasonable inference of age discrimination can arise where the employer had a continuing need for the discharged employee's services in that the discharged employee's duties were still being performed, or where others not in the discharged employee's protected class were treated more favorably.  See id.  Defendants contend that, to the extent the adverse employment action was the defunding of the Tech II position plaintiff held, there was a legitimate non-discriminatory reason for doing so – the recent economic downturn.  Specifically, defendants argue:

> The evidence presently before the court is uncontested and supports the City's claim that it was economically required to reduce staffing in the Engineering Department and it was operationally required to preserve the Technician III position.  Plaintiff presents no opposing evidence other than his belief the City was operating under a plan where its true motive was to discriminate against him when it dropped funding for his position. . . .

In support of this argument, defendants present their declarations.  Defendant Pritchard states:

> In 2009 it was determined that it was economically necessary to further reduce the staff in the Public Works Departments.  At this time the funded positions of the Engineering Department were Director, Technician III, Technician II, and an Administrative Assistant.  Based on the tasks performed by the respective positions it was determined the best position to unfund was the Technician II position. . . . [¶] The decision to unfund the Technician II position and terminate Mr. Johnston was based solely on economic necessity and had nothing to do with his job performance.

Defendant Nichols repeats the above and adds:

> The unfunding of the Technician II position required the City to "layoff" Plaintiff Scott Johnston.  He was laid off for budget reasons in accordance with City procedures, the Memorandum of Understanding between the City and Mr. Johnston's union, and with the approval of the Red Bluff City Council. . . .

///

Defendant Barthel states:

> In 2009, I was instructed by my superior that there had to be further staff reductions in the Department of Engineering and they were eliminating funding for the Assistant Engineer position. This required that Mr. Wharton's employment be terminated. This left the Engineering Department with three employees, who were Vinnie Pagnano as a Technician III, the plaintiff, Scott Johnston as a Technician II, and Dawn Arnett as Administrative Assistant.
> In July 2009, I was instructed by my superiors that there had to be further staff reductions in the Engineering Division of the Public Works Department. After various discussions it was determined that the Technician III position had to be maintained so it became necessary to unfund the Technician II position. This required that I terminate the employment of Scott Johnston. . . .
> Since the termination of Scott Johnston's employment in July 2009, the staff of the Engineering Department as remained at three employees. . . .

All of the defendants deny that they had any plan to replace plaintiff with a younger individual.

In his opposition, plaintiff offers his own declaration, as well as the declarations of his wife and son. Given that the declarations provided by plaintiff's wife and son relate to what they saw and heard at party depositions which occurred during the course of litigation and not to the events alleged in the complaint, they are not relevant on the current issue of whether there was a legitimate non-discriminatory reason to defund the Tech II position. Turning to plaintiff's declaration, plaintiff offers no evidence which would indicate a dispute as to the reason the Tech II position was defunded. Specifically, plaintiff has not identified any evidence of some kind of conspiracy or scheme among defendants to terminate plaintiff in favor of a younger individual. Plaintiff's belief that such is the case is not sufficient to create a genuine dispute sufficient for a trial.

Based on the evidence submitted by defendants, and in light of the absence of evidence submitted by plaintiff, it is undisputed that the Tech II position was defunded due to economic considerations and that this is a legitimate non-discriminatory reason to terminate plaintiff from the Tech II position.

///

### 2. Failure to Promote

The foregoing conclusion does not resolve the central underlying issue in this case – why was plaintiff passed over for promotion to the Tech III position prior to the determination that the Tech III position would be retained and the Tech II position defunded? According to plaintiff, he was passed over for promotion because defendants wanted to replace him with a younger individual. According to defendants, plaintiff did not receive the promotion because he never applied for it.

To prevail on an age discrimination claim arising from a failure to promote, plaintiff must establish: (1) he was a member of a protected class; (2) he applied for a position for which he was qualified; and (3) he was denied a promotion which was given to a younger person. See Steckl v. Motorola, Inc., 703 F.2d 392, 393 (9th Cir. 1983). As indicated above, in denying plaintiff summary judgment on this issue, the court found that there was a genuine issue as to whether and to what extent plaintiff was qualified to perform the duties required of the Tech III position. While defendants' declarations speak to plaintiff's qualifications, defendants do not argue in their motion that plaintiff's lack of qualification is undisputed and that summary judgment should be granted in their favor for this reason. Thus, the issue is not before the court on the current motion. Nor do defendants argue in the context of the ADEA that plaintiff never applied for the position and, therefore, cannot prevail. While it appears undisputed that plaintiff never applied for the Tech III position, it remains in dispute whether he was made to believe that a promotion from within would be automatically considered without application – as was the case when he was promoted in 2002.

On this last point – whether plaintiff was or was not required to apply for promotion to Tech III – defendants' declarations describe the promotion process and the specifics of plaintiff's case, but defendants do not link these facts to any argument that the facts are undisputed on the issue. The legitimate non-discriminatory basis for defunding the Tech II position does not absolve defendants from potential liability arising from passing him over for

promotion to Tech III before the workforce reduction. Defendants simply do not address the central issue of hiring Pagnano instead of promoting plaintiff. Summary judgment is not appropriate on plaintiff's claim that he suffered age discrimination resulting from defendants' failure to promote.

### B. Due Process (Claim 2)

Plaintiff claims that he was denied due process in relation to the failure to promote and resulting termination. Summary judgment in favor of plaintiff on this claim was denied because plaintiff had not met his burden of establishing what procedures were available under the MOU and whether such procedures were adequate and, if adequate, followed. When the terms and conditions of employment are governed by a collective bargaining agreement, such as the MOU in this case, adherence to adequate procedures governing grievances will satisfy procedural due process with respect to adverse employment actions. See Armstrong v. Meyers, 964 F.2d 948 (1992). According to defendants, it is undisputed that the MOU in this case does not provide for any hearing or arbitration upon being denied a promotion and that, for this reason, plaintiff cannot prevail on his due process claim.

A review of the MOU, attached as Exhibit A to counsel's declaration in support of defendants' motion, reflects that, while grievance procedures are described for lay-offs, demotions, and disciplinary actions, there are no such procedures with respect to promotions. Rather, the MOU specifies that, generally, promotions are made from within unless the City Manager determines that the position could be better filled by using an open application process.[2] Because the MOU governs what process is due, and because the MOU provides for no process with respect to promotions, plaintiff cannot sustain his due process claim and summary judgment in favor of defendants is appropriate.

---

[2] It is interesting to note that, while defendants state that it was determined that the Tech III position had to be retained, they do not indicate what factors were considered in making that determination.

In his opposition, plaintiff cites Levine v. City of Alameda, 525 F.3d 903 (9th Cir. 2008), for the proposition that, regardless of the MOU, he has a due process right under the Fourteenth Amendment because he has a protected property interest in continued employment. This case, however, is distinguishable in that Levine was facing a lay-off and, as such, the end of his employment. Here, plaintiff was not denied any continued right to employment. In fact, the result of being denied the promotion to Tech III was that he stayed in the same position he already had – Tech II. Because the decision to deny plaintiff a promotion had no effect on plaintiff's interest in continued employment as a Tech II, he cannot prevail under the Fourteenth Amendment.[3] While plaintiff has a protected right to continued employment, he has no right to a promotion absent evidence of a "binding assurance of a promotion," of which there is none here. Nunez v. City of Los Angeles, 147 F.3d 867, 873 (9th Cir. 1998) (adopting rule followed in 1st, 2nd, 3rd, 4th, 7th, and 11th Circuits).

C.    **Conspiracy (Claim 3)**

As clarified in prior orders, the gravamen of plaintiff's conspiracy claim is that defendants conspired to wrongfully terminate him. As defendants accurately summarize: "The conspiracy claim before the court is 'conspiracy to commit age discrimination.'" Again, the central issue surrounds plaintiff being passed over for the promotion to Tech III. To prevail on the merits of his conspiracy claim, plaintiff must prove at a minimum that one or more specific defendants entered into an agreement with one or more other specific defendants for the purpose of discriminating against plaintiff based on his age. See Alfus v. Pyramid Technology Corp, 745 F. Supp. 1511, 1521 (N.D. Cal. 1990).

---

[3] To the extent plaintiff argues that he was not promoted because defendants knew that they would later determine that the Tech III position was essential and they wanted to keep plaintiff in the non-essential Tech II position, which was ultimately eliminated, plaintiff offers no evidence in support of such a theory. The undisputed evidence in this case shows that the two decisions – who to hire for the Tech III position and which position was essential – were separated in time and circumstance. Specifically, the decision to hire Pagnano resulted from a job opening for a Tech III, while the decision to eliminate the Tech II position resulted from subsequent and unrelated budget constraints.

11

In support of their position that there was no such conspiracy, defendants each offer their declarations in which they so state, thereby meeting their initial summary judgment burden. In opposition, again, plaintiff offers only his declaration and belief that a conspiracy existed, that defendants schemed with one another, and that they lied about it. Plaintiff has not submitted any evidence and simply states: "The facts are specific within the complaint, DSJ and Ex. 1-25 (ECF Doc. 53)." The court has reviewed the documents attached to the amended complaint at docket entry 53 and finds nothing which would tend to suggest a scheme or conspiracy to discriminate against plaintiff based on age. What appears instead is some disagreement about whether the Tech III position would be filled from within or whether outside applicants would be invited to apply.

Based on defendants' declarations, there is no genuine dispute as to any material facts concerning plaintiff's conspiracy claim.

### D. Negligence (Claim 4)

Plaintiff's negligence claim is based on the theory that defendants, as former co-workers and former employer, owed plaintiff a duty to not discriminate against him based on age. Defendants renew their argument that no such duty exists as a matter of law because the individual defendants are immune under state law and because the claim against the City of Red Bluff is essentially subsumed in plaintiff's ADEA claim.

According to defendants, government employees are not immune under state workers compensation law where the injury is the result of conduct not seen as reasonably coming within the compensation bargain. See Kovatch v. California Casualty Management Company, Inc., 65 Cal.App.4th 1256, 1277 (1998). A claim for wrongful termination is a type of claim not barred. See id. Defendants argue that the case law allows a wrongful termination claim but not an ordinary negligence claim.

/ / /

/ / /

While somewhat hypertechnical, defendants' argument is persuasive.[4] A careful review of the amended complaint shows that plaintiff clearly intended to plead a cause of action based on negligence, not wrongful termination.[4] He states that defendants owed him a duty and that they breached that duty causing his damages. The elements of wrongful termination are quite different and have not been plead in such a way as would put defendants on notice of such a claim.[5] Because a claim for ordinary negligence is not the type of claim that can stand against former employers and/or co-workers under California workers compensation law, see Eng v. City of Los Angeles, 737 F. Supp. 2d 1078, 1099 (C.D. Cal. 2010), summary judgment is appropriate on this claim.

### IV. CONCLUSION

Based on the foregoing, the undersigned recommends that:

1. Defendants' motion for summary judgment (Doc. 93) be construed as a motion for summary adjudication and, so construed, be granted in part and denied in part;

2. Summary adjudication be granted in favor of all individual defendants on all claims; and

3. Summary adjudication be granted in favor of defendant City of Red Bluff on all claims except plaintiff's ADEA claim based on failure to promote, which should proceed to trial.

---

[4] This conclusion is not inconsistent with prior orders in which the court concluded that defendants had not, at the time, met their burden of establishing immunity under state law.

[4] It is unclear from the second amended complaint whether plaintiff is alleging this claim as to the City of Red Bluff, or the individual defendants, or all of them. In any event, it does not matter because plaintiff's negligence claim against the City of Red Bluff is subsumed in his ADEA claim, which should proceed to trial as against the City of Red Bluff. Thus, whether based on negligence or the ADEA, the liability of the City of Red Bluff with respect to the decision not to promote plaintiff to the Tech III position will be litigated at trial.

[5] Plaintiff has not requested leave to amend, and it is unlikely leave to amend would be appropriate at this late stage of the proceedings.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  February 13, 2013

**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE